FILED IN OPEN COURT
DATE: 3/8/13

_____
DEPUTY CLERK

IN THE
UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) ) ) ) ) MICHAEL WAYNE HARDING ) ) ) | **INFORMATION** <br><br> Criminal No. 3:12CR00024 <br> In violation of: <br> Title 18, U.S.C., §§ 152(3) and 1343 |

### INTRODUCTION

At all times material to this Information:

1. **MICHAEL WAYNE HARDING** resided in Keswick, Virginia, which is located within the Western Judicial District of Virginia.

### BANKRUPTCY PERJURY

*(Individual Bankruptcy)*

2. On or about April 22, 2011, **MICHAEL WAYNE HARDING** filed a voluntary Chapter 11 Bankruptcy Petition, Case Number 11-61062, pursuant to Title 11 of the United States Code.

3. During the Chapter 11 proceeding, **MICHAEL WAYNE HARDING** was a debtor-in-possession and was required to file Monthly Operating Reports ("MOR's") with the Office of the United States Trustee and the United States Bankruptcy Court. The MOR's were filed under penalty of perjury pursuant to Section 1746 of Title 28 of the United States Code. **MICHAEL**

**WAYNE HARDING** knowingly certified that each of the MOR's were true, accurate and complete.

4. During the Chapter 11 proceeding, **MICHAEL WAYNE HARDING** was obligated, pursuant to a Court order: to close all bank accounts opened prior to the bankruptcy filing; to deposit all income earned by him into a Debtor-In-Possession bank account; and to follow all guidelines, regulations and directives of the Office of the United States Trustee pertaining to Chapter 11 cases.

5. The information provided by **MICHAEL WAYNE HARDING** in his MOR's was material to his bankruptcy case. The statements made with regard to income earned by **HARDING**, or entities controlled by him, and payments made on his behalf, were false. The statements and information provided in the MOR's were knowingly and fraudulently made by **MICHAEL WAYNE HARDING**. **MICHAEL WAYNE HARDING** filed or caused to be filed such MORs in his Chapter 11 bankruptcy for the months of April, May, June, July, August, September, and December 2011, as well as January, February, March and April of 2012. Bank records revealed that **MICHAEL WAYNE HARDING** misreported his income and expenditures on each and every one of these MORs.

6. **MICHAEL WAYNE HARDING** continued to maintain undisclosed bank accounts opened prior to the bankruptcy filing, failed to deposit all income earned into the Debtor-in-Possession bank account, opened additional bank accounts without approval from the United States Trustee and the United States Bankruptcy Court, and transferred income without permission or authority, and concealed income earned by him throughout the pendency of the Chapter 11 case.

7. From April 15, 2011, to December 21, 2011, bank records revealed that **MICHAEL WAYNE HARDING** had $123,398.16 of income that he had not disclosed in the MOR's covering the same time period. Of that amount, all but $3,800 had been withdrawn after his April 22, 2011 filing. Similarly, from January 1, 2012 to April 24, 2012, bank records revealed that **MICHAEL WAYNE HARDING** had $51, 070.01 of income that he did not report to the Trustee as required.

8. On June 13, 2011, during a Section 341 Meeting of Creditors ("Section 341 hearing"), in response to questioning by counsel for the bankruptcy trustee, **MICHAEL WAYNE HARDING**, under oath, testified falsely that he had been made aware that signatures were forged on releases of liens and deeds of trust pertaining to certain property subject to creditor liens when, in fact, **HARDING** himself had forged the signatures. These forged signatures, had they gone undetected, would have invalidated certain creditor liens on the property.

9. During that same Section 341 hearing, **MICHAEL WAYNE HARDING** testified falsely: that he only had an interest in one pre-petition bank account; that he had ceased using the one pre-petition bank account; and that he was and would be depositing all income earned into his Debtor-in-Possession bank account. **HARDING'S** bank records revealed this testimony to be false.

10. On or about May 22, 2012, the Chapter 11 bankruptcy case of **MICHAEL WAYNE HARDING** was converted to a Chapter 7 Bankruptcy Case pursuant to Title 11 of the United States Code.

11. On or about June 29, 2012, in connection with the Chapter 7 proceedings, **MICHAEL WAYNE HARDING**, under oath, testified falsely that he did not have an active

3

personal bank account during the pendency of his Chapter 11 bankruptcy case and that no funds were contained within that account during the Chapter 11 proceedings. **HARDING's** bank records revealed this testimony to be false.

(*HMC Holdings, LLC Bankruptcy*)

12. On or about July 16, 2012, **MICHAEL WAYNE HARDING** caused HMC Holdings, LLC to file a voluntary Chapter 11 Bankruptcy Petition, Case Number 12-61648, pursuant to Title 11 of the United States Code. **MICHAEL WAYNE HARDING** is the principal and sole member of HMC Holdings, LLC.

13. On or about September 7, 2012, **MICHAEL WAYNE HARDING** testified at a Section 341 hearing for HMC Holdings, LLC. At that hearing, **HARDING**, under oath, testified that he had not maintained a personal bank account for several years. **HARDING'S** bank records revealed this testimony to be false.

14. At the same September 7, 2012, Section 341 hearing, **MICHAEL WAYNE HARDING** testified that HMC Holdings, LLC had not paid any attorney's fees on behalf of **MICHAEL WAYNE HARDING** during his personal Chapter 11 bankruptcy proceedings. HARDING'S bank records revealed this testimony to be false.

15. At the same September 7, 2012, Section 341 hearing, **MICHAEL WAYNE HARDING**, under oath, testified falsely that he had "no relationship" with Individual "A". In reality, Individual "A" was a partner with **HARDING** in Carysbrook, LLC, a fact to which **HARDING** admitted under oath during previous Section 341 hearings held on June 13, 2011 and June 29, 2012, in his personal bankruptcy. Specifically, on or about August 30, 2012, **MICHAEL WAYNE HARDING**, by and through his counsel, caused HMC Holdings LLC to

4

file a motion for sale of the Badger Powhatan Property on US Route 29 North of Charlottesville. In the motion for sale, HMC Holdings LLC averred that the sale was to be made to an entity called Development Management IV, LLC. Among the signatories to the contract attached to the motion for sale, on behalf of Development Management IV, LCC was Individual "A". Moreover, **MICHAEL WAYNE HARDING** later admitted, upon creditor cross examination, that Individual "A" had previously received a deed of trust on the Badger Powhatan property, inferior to that of the other creditors in HMC Holdings, LLC and **MICHAEL WAYNE HARDING's** bankruptcies, in the same dollar amount as the amount purported to be the deposit made by Development Management IV, LLC to purchase the Badger Powhatan property pursuant to the motion for sale.

Additionally, **MICHAEL WAYNE HARDING** later admitted, upon creditor cross examination, that Individual "A" was paying for his bankruptcy attorney.

16. At the same September 7, 2012, Section 341 hearing, **MICHAEL WAYNE HARDING** testified that he had not caused HMC Holdings, LLC to pay any person or entity other than creditors to HMC Holdings, LLC. Bank records revealed this statement to be false.

## WIRE FRAUD

### The Scheme and Artifice to Defraud

17. On April 24, 2012, **MICHAEL WAYNE HARDING** opened a business account under the name HMC Holdings, LLC at Virginia National Bank, which is headquartered in Charlottesville, Virginia, in the Western Judicial District of Virginia.

18. On July 12, 2012, **MICHAEL WAYNE HARDING** wrote a check from an account under the name of Carysbrook, LLC, at Union First Market Bank in the amount of $24,200, and deposited the proceeds into his HMC Holdings, LLC account at Virginia National Bank. The account had insufficient funds, and the check was therefore worthless; however, Virginia National Bank was not aware that the Union First Market Bank check was fraudulent, and therefore noted his Virginia National Bank as having the funds indicated on the Union First Market Bank Check.

### The Purpose of the Scheme and Artifice to Defraud

19. **MICHAEL WAYNE HARDING's** purpose in his scheme was to enrich himself financially and to pay debt levels on credit card accounts, thereby expanding his purchasing capability.

### Manner and Means

20. Over the next 48 hours, on July 13 and 14, 2012, **MICHAEL WAYNE HARDING** made $17,769.92 worth of withdrawals from his HMC Holdings, LLC account at Virginia National Bank. These transactions consisted of the following:

    a. July 13, 2012: A check written to Virginia National Bank in the amount of $868

    b. July 13, 2012: A check written to Michael Harding from Michael Harding in the amount of $3750

    c. July 13, 2012, at 3:44 a.m.: Online payment to Capital One in the amount of $2672.05

6

      d. July 13, 2012, at 2:11 a.m.: Online payment to Citi Card in the amount of $6777.76

      e. July 14, 2012: A check written to Michael Harding from Michael Harding in the amount of $825

21. Capital One's consumer credit card operations are located in Salt Lake City, Utah.

22. Citi Card's consumer credit card operations are located in Columbus, Ohio.

23. On July 16, 2012, representatives of Union First Market Bank contacted representatives of Virginia National Bank and advised that the July 12, 2012, $24,200 check written by **MICHAEL WAYNE HARDING** off of the Union First Market Bank Carysbrook account to the Virginia National Bank HMC Holdings account was worthless. Representatives of Virginia National Bank contacted **MICHAEL WAYNE HARDING**. **MICHAEL WAYNE HARDING** initially advised that there was a problem he had getting paid by someone else, and that he would pay Virginia National Bank for the funds he had already spent. He then failed to respond to Virginia National Bank's subsequent collection efforts, including subsequent phone calls and a demand letter sent by certified mail.

**COUNT ONE**
18 U.S.C. § 1343
(Wire Fraud)

The United States Attorney charges that:

24. The allegations in Paragraphs 1 through 23 of the Information are realleged and incorporated as though set forth in full herein.

25. On or about the dates listed below, in the Western Judicial District of Virginia and elsewhere, defendant **MICHAEL WAYNE HARDING**, for the purpose of executing, and

attempting to execute, the scheme and artifice to defraud Virginia National Bank and to obtain property by materially false or fraudulent pretenses, representations, and promises, did knowingly transmit and cause to be transmitted by means of a wire communication in interstate commerce certain writings, signs, signals, pictures and sounds, to-wit:

| DATE | WIRE TRANSMISSION |
|---|---|
| 7/13/2012 | Wire Data Transmission from Keswick, Virginia, in the Western District of Virginia to Capital One in Salt Lake City, Utah to the prejudice of Virginia National Bank in Charlottesville, Virginia |
| 7/13/2012 | Wire Data Transmission from Keswick, Virginia, in the Western District of Virginia to Citi Card in Columbus, Ohio to the prejudice of Virginia National Bank in Charlottesville, Virginia |

All in violation of Title 18, United States Code, Section 1343.

## COUNT TWO
18 U.S.C. § 152(3)
(False Statement under Penalty
of Perjury in Bankruptcy)

The United States Attorney charges that:

26. The allegations in Paragraphs 1 through 23 of the Information are realleged and incorporated as though set forth in full herein.

27. On or between April 22, 2011, and September 12, 2012 in the Western Judicial District of Virginia, the defendant **MICHAEL WAYNE HARDING**, knowingly and fraudulently made false declarations, certificates, verifications, and statements, under penalty of perjury as permitted under Section 1746 of Title 28, in and in relation to a case under Title 11 of the United States Code. Specifically, during a Title 11, United States Code, Section 341 Meeting

of Creditors, while under oath and testifying in that proceeding and in responding to questions from counsel for the United States Trustee, **MICHAEL WAYNE HARDING** made the following materially false statements: (1) that he had been made aware that signatures were forged on releases of liens and deeds of trust when, in fact, **HARDING** himself had forged the signatures; (2) that HMC Holdings, LLC had not paid any person or entity other than creditors to HMC Holdings, LLC, when, in fact, HMC Holdings LLC had paid **MICHAEL WAYNE HARDING's** personal debts; (3) that he only had an interest in one pre-petition bank account, that he had ceased using said pre-petition bank account, and that he was and would be depositing all income earned into his Debtor-in-Possession bank account, when, in fact, **MICHAEL WAYNE HARDING** knew his testimony was false; and (4) that he had "no relationship" with Individual "A" when, point in fact, Individual "A" was his business partner and was paying for his bankruptcy attorney.

All in violation of Title 18, United States Code, Section 152(3).

March 8, 2013
Date

Timothy J. Heaphy
TIMOTHY J. HEAPHY
United States Attorney